IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

JASON WALKER,                          §
TDCJ-CID No. 01532092,                 §
                                       §
        Plaintiff,                     §
                                       §
v.                                     §        2:17-CV-221-D
                                       §
JASON CLARK, et al.,                   §
                                       §
        Defendants.                    §

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF PARTIAL DISMISSAL**

Plaintiff JASON WALKER, acting pro se and while a prisoner incarcerated in the Texas

Department of Criminal Justice, Institutional Division, has filed suit pursuant to Title 42, United

States Code, Section 1983 complaining against the Texas Department of Criminal Justice

("TDCJ") and numerous other defendants and has been granted permission to proceed in forma

pauperis.  As outlined below, certain claims and defendants should be dismissed from this

lawsuit pursuant to screening under the Prison Litigation Reform Act ("PLRA").

I.
JUDICIAL REVIEW

When a prisoner confined in any jail, prison, or other correctional facility brings an action

with respect to prison conditions under any federal law, the Court may evaluate the complaint

and dismiss it without service of process, *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990), if it is

frivolous[1], malicious, fails to state a claim upon which relief can be granted, or seeks monetary

---

[1] A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir. 1993); *see Denton v. Hernandez*, 504 U.S. 25 (1992).

relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2). The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. 42 U.S.C. § 1997e(c)(1). A *Spears* hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991).[2]

The Magistrate Judge has reviewed Walker's pleadings and the facts alleged by Walker to determine if his claim presents grounds for dismissal or should proceed to answer by defendants.

## II.
## WALKER'S FACTUAL ALLEGATIONS

In this case Walker alleges that defendants targeted him for retaliation because he wrote and published articles regarding prisoner abuse by TDCJ and, more specifically, the Clements Unit. Walker claims TDCJ officials acted unconstitutionally to chill and suppress his freedom of speech and expression to prevent him from writing and publishing reproving articles about TDCJ on the internet or other social media accounts. Walker claims he is a "prison activist" and published writer wherein he publishes articles regarding staff abuse and misconduct in prisons. [ECF 3, p. 8, ¶ 1]. Walker claims all defendants sued know he is a writer who publishes such articles and also that these articles have gained the attention of media personnel and the public. [ECF 3, p. 8, ¶ 1]. By his complaint, Walker argues defendants have conspired to retaliated against him by giving him bogus disciplinary cases to keep him classified and housed in administrative segregation to suppress his free speech and interfere with publishing his prison

---

[2] *Cf, Green vs. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986) ("Of course, our discussion of *Spears* should not be interpreted to mean that all or even most prisoner claims require or deserve a *Spears* hearing. A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone or the complaint together with the *Watson* questionnaire.")

condition articles. [ECF 3, p. 8, ¶ 1].

<u>Defendant Clark</u>

Walker claims defendant JASON CLARK, who is not employed by TDCJ, is responsible for the "illegally" promulgated TDCJ policy regarding social media usage by prisoners. [ECF 3, p. 9, ¶ 1]. This policy prohibits prisoners from using social media accounts. Walker claims no penological interest is supported by this policy and it is only used to suppress an inmate's free speech, especially as applied to himself. [ECF 3, p. 9, ¶ 1].

<u>Defendants Carrillo, Raines, and Andrews</u>

Walker claims defendants JOSHUA CARRILLO, TERRY RAINES, and DAMON ANDREWS use the social media policy to retaliate against prisoner writers who are exposing the corruption in prison systems. [ECF 3, p. 9, ¶ 2]. Walker asserts not only that other policies in effect at TDCJ adequately deter prisoners from engaging in behavior that threatens the safety of others, but also that this social media policy is merely designed to punish those who exercise their First Amendment rights. [ECF 3, pp. 9-10, ¶¶ 3-6].

Walker claims defendant CARRILLO wrote him a false disciplinary case in retaliation for "reporting abusive guards and him." [ECF 3, p. 10, ¶¶ 3-4]. Walker claims CARRILLO refused to allow Walker to make a witness statement against other TDCJ guards involved in using chemical agents against another inmate, Kevin 'Rashid' Johnson. Thus, Walker placed an article about the incident online and received a disciplinary case in response to such posting. [ECF 3, p. 10-11, ¶ 4, ¶ 1-2]. Walker further claims CARRILLO made disparaging and racist comments and gestures to him on the way to the disciplinary hearing and lied during the disciplinary hearing to secure a guilty finding. [ECF 3, p. 11-12, ¶ 3-5, ¶ 4].

Walker claims the disciplinary review officer made an unlawful finding of guilt based on

an inaccurate definition of "social media account." [ECF 3, p. 11-12, ¶ 6, ¶ 1]. Thus, Walker

claims CARRILLO went beyond the scope of the policy to punish him. Walker claims he

*continued* to post "subsequent" articles after the disciplinary case, articles that did not mention

CARRILLO, and Walker never received any disciplinary cases for those postings. [ECF 3, p. 12,

¶ 3]. Walker claims this disciplinary hearing was eventually "expunged," but only after he had

served his punishment. [ECF 3, pp. 12, 14, 16, ¶ 5, ¶ 2, ¶ 4]. Walker claims he was told in a later

classification hearing that this disciplinary case was the reason he was not reclassified and

released from administrative segregation. [ECF 3, p. 16, ¶ 5]. Walker sues this unnamed

classification "grading" officer as well. Walker specifically informs the Court that "none of [his]

claims are for *procedural* due process violations despite [this] punishment." [ECF 3, p. 14, ¶ 2].

Walker claims defendant RAINES denied him the opportunity to change his witness list

for the disciplinary hearing. [ECF 3, p. 13, ¶ 1-3]. Walker claims RAINES deliberately ignored

evidence of inconsistencies in CARRILLO's statements, including information that Kevin

'Rashid' Johnson, another inmate, wrote the statements posted to the website. [ECF 3, p. 13, ¶

4]. Walker claims RAINES used only CARRILLO's statements, and no other contradictory

evidence, to support a finding of guilt in the disciplinary hearing. [ECF 3, p. 14, ¶ 1]. Walker

claims CARRILLO told him, following the result of the disciplinary hearing, "what happens at

Clements [Unit], stays at Clements [Unit]." [ECF 3, p. 14. ¶ 3]. Walker goes on to list the

mitigating and exculpatory factors he considers were ignored during his disciplinary hearing.

[ECF 3, p. 14-15, ¶ 4-5, ¶ 1-2].

Walker claims he appealed his disciplinary case and defendant DAMON ANDREWS

reviewed his appeal. [ECF 3, p. 15, ¶ 3-4]. Walker claims ANDREWS refused to reverse the

disciplinary proceedings solely because he intended to punish Walker for exposing abuses in the

prison system. [ECF 3, p. 15, ¶ 5]. Walker claims a news journalist, Kamala Kelkar, contacted TDCJ officials, and the TDCJ officials claimed no inmate had received a disciplinary case for posting articles online. [ECF 3, p. 16, ¶ 2].

<u>Defendants Ramirez, Miller, Stewart, Andrews, and Jones</u>

Walker sues defendants RAMIREZ and other "unit grievance department employees" for failing to pick up, read, and investigate inmate's grievances. [ECF 3, p. 17, ¶ 1]. Walker claims on at least three occasions [4-18-17, 9-14-16, and 9-21-16] he filed Step 1 grievances against defendant MALLORY C. MILLER for stealing funds from his inmate trust account, and defendant RAMIREZ refused to process the grievances. [ECF 3, p. 17, ¶ 3]. RAMIREZ listed the claims as "redundant," but Walker claims each grievance was a separate incident. [ECF 3, p. 17, ¶ 4]. Walker claims RAMIREZ is both a prison guard and a grievance investigator. [ECF 3, p. 17, ¶ 5]. Walker also claims RAMIREZ served him spoiled bologna on at least one occasion in retaliation for his complaints. [ECF 3, p. 17, ¶ 5].

Walker further claims RAMIREZ did not process his grievances regarding the social media policy that resulted in his disciplinary case. [ECF 3, p. 18, ¶ 1]. Walker claims another TDCJ employee, Jade Gonzalez, told him that TDCJ officials had acted wrongly in giving him a disciplinary case for his use of social media, and the failure to process grievances was a result of TDCJ officials "not wanting to get sued." [ECF 3, p. 18, ¶ 1].

Walker also sues defendant CORA STEWART, a TDCJ employee who works in the commissary store, and claims she told him if he did not stop trying to assist another inmate who had not received his commissary items, then she would "arrange to have money stolen from [his] account as well." [ECF 3, p. 20, ¶ 1]. Walker claims STEWART told him she could have defendant ANDREWS take Walker off commissary restriction solely for the purpose of stealing

from him. [ECF 3, p. 20, ¶ 2]. Walker claims on February 21, 2017, he had a remaining balance

of $6.44 directly after speaking with STEWART and making his final purchase that day. On

March 8, 2017, Walker claims his balance only reflected $1.53, indicating to him that

STEWART did steal $4.90. [ECF 3, p. 20, ¶ 3]. Walker claims he confronted defendant

MILLER, another commissary employee, about the deficient funds, and MILLER acknowledged

the theft, stating she steals from inmates "that like to cry like babies and post it on the Internet."

[ECF 3, p. 20, ¶ 4]. Walker claims RAMIREZ refused to file his grievances against MILLER.

[ECF 3, p. 20, ¶ 5].

Walker reported the theft to defendant ANDREWS, who asked defendant AMANDA

JONES to check the commissary records. [ECF 3, p. 21, ¶ 1-2]. Walker claims they checked only

the computer records and failed to cross-check the paper copies to prove he had made the

purchases alleged by the commissary workers. [ECF 3, p. 21, ¶ 2-3]. Walker alleges MILLER

claims Walker made a purchase despite his misplaced ID card, so she could not scan his

purchase; Walker claims this conduct resulted in MILLER's reassignment. [ECF 3, p. 21, ¶ 4-5].

Walker lists several reasons why he could not have made the alleged purchases. [ECF 3, p. 22, ¶

1-5].

Defendant Foley

Walker claims defendant WARDEN NFN FOLEY has ratified and promulgated illegal

grievance procedures and operations. [ECF 3, p. 23, ¶ 1]. The current grievance procedures allow

officers to dispose of grievances without processing them. Specifically, Walker claims officers

Chelsea Lewis, Kris Ritz, NFN Baker, Jesus Cruz, NFN Campos, and Brandon Smith have

picked up grievances that were never processed or answered. [ECF 3, p. 23, ¶ 3-5]. Walker

claims he wrote a grievance that was processed about this matter, and defendant FOLEY found

no policy violation. [ECF 3, p. 24, ¶ 1].

Walker claims FOLEY denied in-person visitation between Walker and journalist Creede Newton after another prisoner died, because of Walker's online published articles. [ECF 3, p. 25, ¶ 2]. Walker claims an in-person visitation was necessary because his incoming legal and media mail had been tampered with in the past. [ECF 3, p. 25, ¶ 3]. Walker claims other inmates had their in-person media visits denied as well. [ECF 3, p. 25, ¶ 4]. Walker acknowledges he could continue his communications through written correspondence. [ECF 3, p. 25, ¶ 5].

Defendant Glenn

Walker sues unnamed "mailroom employees" and defendant GENETTA GLENN, mailroom supervisor, because on January 12, 2016, his media mail from "Prison Focus" was wrongfully opened. [ECF 3, p. 26, ¶ 1]. Walker claims TDCJ employees tried to cover up the mistake by stating they had "just opened" the mail upon approaching Walker's cell. [ECF 3, p. 26, ¶ 2]. Walker states that on October 6, 2016, mailroom employees illegally opened media mail from John Washington. [ECF 3, p. 26, ¶ 4-5]. Walker requested only GLENN deliver his mail, and this request was denied; further, Walker claims the opening of such media mail outside of the presence of the inmate is regular practice for other inmates as well. [ECF 3, p. 26, ¶ 5]. Walker claims the media attention at the Unit was a result of three inmates' deaths under the supervision of the prior warden and assistant wardens. [ECF 3, p. 27, ¶ 1-3].

Defendants Grantham and King

Walker claims defendants DWAYNE GRANTHAM and TIMOTHY KING were informed of an incident where Walker was suffering from suspected food poisoning on May 6, 2017. [ECF 3, p. 28, ¶ 1-5]. Walker claims GRANTHAM and KING informed him of the "outbreak" of food poisoning on his cellblock and told him to wait it out over the weekend. [ECF

3, p. 28, ¶ 5]. Walker claims KING informed him that prison officials reuse old food, thus

resulting in the case of food poisoning. [ECF 3, p. 29, ¶ 1]. Walker claims the delay in care

caused him to be in agony until the next morning, when other TDCJ officers found him and

provided him aid. [ECF 3, p. 29, ¶ 2-4].

Defendants Williams, Carrizales, King, Nash, Cano, Volgelgesang and DeShields

      Walker claims he continued to suffer pain from this suspected food poisoning after his

release from the infirmary. [ECF 3, p. 30, ¶ 1]. Walker claims nurse TAMMY WILLIAMS

denied him care by failing to report his need for pain pills. [ECF 3, p. 30, ¶ 1]. On May 25, 2017,

Walker was seen by defendant nurse MARIA CARRIZALES, who told him the protocol for

food poisoning was to drink sips of water and eat light if it ever occurred again and that the pain

would resolve itself. [ECF 3, p. 30, ¶ 3]. Walker claims after filing grievances about the denial of

medical care, he was approached by KING who told him the reason he was denied care was

because he filed grievances. [ECF 3, p. 30, ¶ 4]. Walker claims CARRIZALES and WILLIAMS

are defendants in other suits where Walker has exposed injustices, and this explains why they

denied him adequate care. [ECF 3, p. 31, ¶ 3].

      Walker claims defendants DARRELL NASH, LEROY CANO, RIC VOLGELGESANG,

DENISE DESHIELDS (M.D.), and other unknown medical unit staff, are all aware of the prison

abuses and injustices, have supervisory positions, and are doing nothing to correct these

deficiencies in medical care and prisoner treatment. [ECF 3, p. 31, ¶ 3]. Specifically, Walker

claims VOLGELGESANG responded to a grievance stating Walker had "received timely and

appropriate care." [ECF 3, p. 31, ¶ 4]. In Step 2 of the grievance, DESHIELDS affirmed that

finding. [ECF 3, p. 31, ¶ 5, p. 32, ¶ 1-5, p. 33, ¶ 1-5, p. 34, ¶ 1-7].

      Walker claims CARRIZALES tried to make a false report against Walker after he

threatened to expose and report her inadequate treatment of him. [ECF 3, p. 35, ¶ 3]. Walker

claims he received notice of a disciplinary case for this report, but the case was eventually

dismissed. [ECF 3, p. 35, ¶ 4]. Walker acknowledges that CARRIZALES, DESHIELDS,

WILLIAMS and VOGELGESANG are employed by the Texas Tech University Health Sciences

Center ("TTUHSC") and are a separate entity from TDCJ; however, Walker claims TTUHSC is

equally familiar and responsible for prison injustices. [ECF 3, p. 36, ¶ 4].

<u>Defendants Young and Asberry</u>

Walker also sues defendants SONYA YOUNG and RODNEY ASBERRY who, along

with NFN Lovato were involved in a search of his cell on February 6, 2017. [ECF 3, p. 36, ¶ 5].

Walker claims YOUNG and ASBERRY went through his legal documents in retaliation for his

filings. [ECF 3, p. 37, ¶ 1]. YOUNG threw out legal documents, a Black Panther text, and other

political books. [ECF 3, p. 37, ¶ 2]. ASBERRY signed off on confiscation of certain items. [ECF

3, p. 37, ¶ 3]. Walker claims his grievances were lost regarding this matter, and he was moved to

a worse cell following his complaints. [ECF 3, p. 37, ¶ 4-7]. Walker claims he was held in a cell

in the dark without a functional shower for eight days. [ECF 3, p. 37, ¶ 6-7]. Walker claims he

was told this treatment was on orders from a higher authority. [ECF 3, p. 38, ¶ 1-2].

<u>Defendant Collier</u>

Finally, Walker sues defendant BRYAN COLLIER, the executive director of TDCJ,

because Walker claims COLLIER conspires with TDCJ officials to allow prison abuses to

continue. [ECF 3, p. 39, ¶ 6]. Walker claims COLLIER is aware of the practices of writing false

disciplinary cases and has failed to act on this knowledge. [ECF 3, p. 39, ¶ 7].

<u>Defendants "Unnamed" TDCJ Officials</u>

Walker alleges TDCJ officials, not specifically identified by the complaint, were

involved in denying an in-person meeting between himself and news journalist, Kamala Kelkar. Walker acknowledges he could communicate with Kelkar by mail but was denied an in-person visit in retaliation for his published writings. Walker claims this denial of in-person access resulted from unclear TDCJ policies and occurred without justification based on a penological interest.

III.
THE LAW AND ANALYSIS

Walker brings this action under Title 42 U.S.C. § 1983 for violation of civil rights guaranteed by the First, Eighth, and Fourteenth Amendments to the United States Constitution. "Section 1983 creates a private right of action for redressing the violation of federal law by those acting under color of state law. It is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere." *Colson v. Grohman*, 174 F.3d 498, 504 n. 2 (5th Cir. 1999) (citing *Albright v. Oliver*, 510 U.S. 266 (1994)).

"Section 1983 provides that any person who, under color of state law, deprives another of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... 'Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates.' " *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989). "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Id.* (citing *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997), cert. denied, 522 U.S. 1016 (1997). Walker's claims against these many defendants can be classified as either substantive due process claims or retaliation claims. The retaliation claims are broken down by the specific constitutional deprivation alleged by Walker.

**A. Substantive Due Process Claims**

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend XIV. Three types of section 1983 claims may be brought against state actors under the Due Process Clause of the Fourteenth Amendment. *See Zinermon v. Burch*, 494 U.S. 113 (1990). First, the Due Process Clause incorporates specific protections defined in the Bill of Rights. Thus, Walker may sue under section 1983 for defendants' alleged violation of his First Amendment right to freedom of speech. *Id*. Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." *Id*. (quoting *Daniels v. Williams*, 474 U.S. 327, 329 (1986)). For either of these two types of due process claims the constitutional violation actionable under section 1983 is complete when the wrongful action is taken. *Id*. (citing *Daniels*, 474 U.S. at 339).

Third, the Due Process Clause contains a procedural component that allows actions to be brought for the deprivation of a constitutionally protected interest in life, liberty, or property without due process of law. *Id*. (citing *Parratt v. Taylor*, 451 U.S. 527 (1981), overruled in part on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986)); *see also Carey v. Piphus*, 435 U.S. 247 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property. Thus, in deciding what process constitutionally is due in various contexts, the Court repeatedly has emphasized that 'procedural due process rules are shaped by the risk of error inherent in the truth-finding process.' "). For this type of due process claim the constitutional violation actionable under section 1983 is not complete when a deprivation occurs; instead, it is complete only when the

state fails to provide due process. *Id*. In *Carey* the Court explained that a deprivation of procedural due process is actionable under section 1983 without regard to whether the same deprivation would have taken place even in the presence of proper procedural safeguards. *Carey*, 435 U.S. 247 (even if the deprivation was in fact justified, so the plaintiffs did not suffer any "other actual injury" caused by the lack of due process, "the fact remains that they were deprived of their right to procedural due process"). Nevertheless, in cases where the deprivation would have occurred anyway, and the lack of due process did not itself cause any injury (such as emotional distress), the plaintiff may recover only nominal damages. *Id*.

To establish a due process violation in connection with a prison disciplinary hearing, a prisoner must establish that he has been denied a "liberty interest" that was infringed or affected by the prison action. *Richardson v. Joslin*, 501 F.3d 415, 419 (5th Cir. 2007). Generally, protected liberty interests are "limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force...nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citations omitted). In *Sandin*, the discipline administered the prisoner was confinement in isolation, which the court found "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest" that would entitle the prisoner to procedural due process protections. *Id*. at 486. A loss of privileges does not implicate the due process clause. *See also Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000) (prisoner's thirty-day loss of commissary privileges and cell restriction due to disciplinary action failed to give rise to due process claim).

Walker fails to allege which due process theory he is attempting to advance and has

failed to allege how each defendant was personally involved in the deprivation of his right to due process. Although the Fifth Circuit has held that the filing of retaliatory disciplinary charges can give rise to an independent section 1983 action or can be part of a procedural due process review of the disciplinary action, *Woods*, 60 F.3d at 1165, and has also held that it is a violation of due process to punish inmates for acts they could not have known were prohibited, *Gibbs v. King*, 779 F.2d 1040, 1044 (5th Cir. 1986), cert. denied, 476 U.S. 1117 (1986), the undersigned finds Walker has alleged no set of facts in support of a due process claim against any of the defendants.

Walker first asserts that his due process rights were violated when he was convicted of a disciplinary infraction. He has no constitutionally protectable property or liberty interest in his classification or the loss of opportunity to accrue good-time credits, however. *Malchi*, 211 F.3d at 959; *see also Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999). Likewise, the verbal reprimand and commissary and recreation restrictions do not implicate due process concerns because they are not an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Malchi*, 211 F.3d at 959; *see also Hinojosa v. Thaler*, 427 Fed. App'x 354, 355 (5th Cir. June 6, 2011).

There exists a long line of cases in this Circuit holding that *Heck* and *Edwards* do not apply to bar a claim that a disciplinary charge and conviction were the result of retaliatory action by a prison official. *See*, e.g., *Walker v. Savers*, 583 F. App'x 474, 475–76 (5th Cir. 2014) ("But because a prisoner need not demonstrate a favorable outcome of his disciplinary case in order to pursue a related retaliation claim, *Heck* does not bar the retaliation claim."); *Hanna v. Maxwell*, 548 F. App'x 192, 196 (5th Cir. 2013) ("When retaliation is alleged, an inmate need not show that a disciplinary conviction has been overturned."), cert. denied, 135 S.Ct. 101 (2014);

*Mahogany v. Rogers*, 293 F. App'x 259, 260 (5th Cir. 2008) ("Mahogany's retaliation claim is not barred under *Heck* because favorable termination of allegedly retaliatory disciplinary proceedings is not a requisite of a retaliatory interference claim." (quotation marks and brackets omitted)). Thus, the Court will separately consider Walker's retaliation claims.

## B. Retaliation Claims

Walker next asserts that his constitutional right to free speech was violated because he received this disciplinary conviction as retaliation for filing previous grievances. To state a § 1983 claim of retaliation for the exercise of free speech, Walker must allege:

(1) the defendants were acting under color of state law;

(2) plaintiff's speech activities were protected under the First Amendment;

(3) the defendants intended to retaliate for the exercise of that right;

(4) plaintiff suffered a retaliatory adverse act; and

(5) but for defendants' retaliatory motive the adverse act complained of would not have occurred.

*See Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997), cert. denied, 522 U.S. 1016 (1997); *see also Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), cert. denied sub nom, *Palermo v. Woods*, 516 U.S. 1084 (1996); *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997), cert. denied, 522 U.S. 995 (1997); *Freeman v. Texas Dept. of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004). Proof of retaliatory intent requires "direct evidence of motivation or ... 'a chronology of events from which retaliation may plausibly be inferred.'" *Woods*, 60 F.3d at 1166 (quoting *Cain v. Lane*, 857 F.2d 1139, 1142, n. 6 (7th Cir. 1988) (merely alleging the ultimate fact of retaliation is insufficient)). To claim retaliation, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or

her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). The inmate must be able to point to a specific constitutional right that has been violated. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999).

In the context of this case, a retaliatory adverse action is an action taken in an effort either to chill Walker's exercise of his right to free speech, or to punish him for having exercised that right. *Johnson*, 110 F.3d at 310. Any alleged "chill" of protected rights must be more than "minimal" and not "wholly subjective." *United States v. Ramsey*, 431 U.S. 606 (1977). "To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them," the Fifth Circuit has cautioned courts to "carefully scrutinize" retaliation claims. *Woods*, 60 F.3d at 1166.

A section 1983 action is not a proper means for challenging punishment resulting from a prison disciplinary action. *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998), cert. denied, 525 U.S. 1151 (1999). To pursue a civil rights action on this basis, the prisoner must show that the punishment imposed was reversed on appeal, expunged by executive order, or otherwise declared invalid in a state collateral proceeding or by writ of habeas corpus. *Edwards v. Balisok*, 520 U.S. 641, 643 (1997); *Clarke*, 154 F.3d at 189. Walker has not alleged or shown that he met these prerequisites. Thus, to any extent Walker challenges the imposition of punishment from his disciplinary actions, such claims are barred.

In addition, Walker's Eighth Amendment claim regarding the charges and punishment levied against him should be dismissed because he has not established that his punishment deprived him of the "minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (citation omitted). Further, "[i]mprisonment necessarily entails a loss of manifold rights and liberties. A prisoner is not free to do that which he might wish to do, nor

may he do allowable things at a time and in a manner he might prefer." *Muhammad v. Lynaugh*, 966 F.2d 901, 902 (5th Cir. 1992); *see also Bell v. Wolfish*, 441 U.S. 520, 537 (1979) ("[l]oss of freedom of choice and privacy are inherent incidents of confinement ..."). Thus, prisoners do not enjoy the same privacy rights accorded to those individuals not incarcerated and do not have a subjective expectation of privacy in their prison cells regarding cell searches. *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984).

To the extent that Walker alleges that the discipline was "pure ill due to freedom of speech" or retaliation for the exercise of his First Amendment rights, he has not alleged facts that would support such a claim. Claims of retaliation are regarded by federal courts with skepticism, and federal courts must scrutinize such claims to guard against inmates use of such claim as shields with which they may insulate themselves from disciplinary actions. *Woods*, 60 F.3d at 1166. Mere conclusory allegations of retaliation are not enough to establish a claim. *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (internal citations omitted). Accordingly, a significant burden is placed upon the inmate to produce direct evidence of motivation or to allege a chronology of events from which retaliation may be plausibly inferred. *Id*. (citation and internal quotation omitted); *cf. Hart v. Hairston*, 343 F.3d 762 (5th Cir. 2003) (where an inmate established a "chronology of events" by alleging facts that directly tied the inmate's exercise of his First Amendment rights to the filing of charges.) Walker has not met this burden because he has stated nothing more than conclusory allegations.

Additionally, "retaliation against a prisoner is actionable only if it is capable of deterring a prisoner of ordinary firmness from further exercising his constitutional rights." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (citation omitted). Courts are to view retaliation claims skeptically, "lest federal courts embroil themselves in every disciplinary act that occurs in state

penal institutions." *Woods*, 60 F.3d at 1166 (citation omitted). Accordingly, *de minimis* reactions to protected speech—such as minor inconveniences or discomfort—will not satisfy that requirement. *See Morris v. Powell,* 449 F.3d 682, 685-86 (5th Cir. 2006). An inmate's personal belief that he is a victim of retaliation, without more, is insufficient to state a claim. *Jones*, 188 F.3d at 325.

Because many of Walker's claims of wrongful conduct by defendants (including denial of access to the courts, wrongful opening of legal and media mail, unfair classification and housing assignments, food poisoning and denial of medical care, failure to properly investigate grievances, and his supervisory liability claims) stem from claims of retaliation regarding his rights to free speech, the Court will first discuss Walker's constitutional free speech protections as a prisoner before turning to his remaining retaliation-based claims.

1. First Amendment Right to Free Speech

"A prison inmate is entitled to his First Amendment right to freedom of expression so long as it is not inconsistent with his status as a prisoner and does not adversely affect a legitimate state interest." *Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989) (citing *Pell v. Procunier*, 417 U.S. 817 (1974) (upholding regulation banning face-to-face media interviews with specific prisoners because First Amendment does not give the media greater access to prisons than it gives ordinary citizens); *Procunier v. Martinez*, 416 U.S. 396 (1974) (prison regulation governing outgoing mail would be upheld if regulation furthered substantial governmental interests of security, order, and/or rehabilitation, and if regulation was no greater than necessary to further legitimate governmental interest involved), overruled in part, *Thornburgh v. Abbott*, 490 U.S. 401 (1989) (prison regulation governing receipt of subscription publications by federal inmates would be upheld if reasonably related to legitimate penological

interests)). "The Supreme Court has held that 'when a prison regulation impinges on inmates'

constitutional rights, the regulation is valid if it is reasonably related to legitimate penological

interests.' " *Jackson*, 864 F.2d at 1248 (quoting *Turner v. Safley*, 482 U.S. 78 (1987)). The

Supreme Court has explained that "such a standard is necessary if 'prison administrators ..., and

not the courts, [are] to make the difficult judgments concerning institutional operations.' "

*Turner*, 107 S.Ct. at 2261-2262 (quoting *Jones v. North Carolina Prisoners' Labor Union*, 433

U.S. 119 (1977)). "While we deal here with an action rather than a regulation, the same standard

is applicable to determine if the prison authorities' response to [plaintiff's] writing is

constitutionally permitted." *Jackson*, 864 F.2d at 1248.

Walker's complaint alleges that defendants charged him with a prison disciplinary action

in retaliation for publishing articles critical of TDCJ. Such a claim alleges the violation of a well-

established constitutional right to be free from governmental interference in his contacts with the

media if that interference is based on the content of his writings. *See Martinez*, 94 S.Ct. at 1811.

In *Martinez* the Supreme Court explained that:

> [p]rison officials may not censor inmate correspondence simply to eliminate
> unflattering or unwelcome opinions or factually inaccurate statements. Rather,
> they must show that a regulation authorizing mail censorship furthers one or more
> of the substantial governmental interests of security, order, and rehabilitation ...
> [T]he limitation of First Amendment freedoms must be no greater than is
> necessary or essential to the protection of the particular governmental interest
> involved.

*Id*.; *see also Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996) (en banc) ("retaliation

against [plaintiff] for criticism of the prison administration that was truthful, and not otherwise

offensive to some penological interest ... would have violated a clearly established

[constitutional] right").

Although prison inmates do not shed all constitutional rights at the prison gate, "lawful

incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *See Sandin v. Conner,* 515 U.S. 472, 484 (1995) (quoting *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125 (1977) (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)). Thus, "the exigencies of prison administration justify ... more stringent restrictions on prisoners' speech and association than would be permissible on the outside." *McNamara v. Moody*, 606 F.2d 621, 623 n. 3 (5th Cir. 1979). As an example, in *Adams v. Gunnell*, 729 F.2d 362, 367-68 (5th Cir. 1984), prison officials disciplined inmates for collaborating in a prison-wide petition. While recognizing that prisoners may exercise a variety of First Amendment rights, the court reasoned, nevertheless, that where internal grievance procedures are available, a prison may proscribe the use of internally circulated petitions if it believes they contain the potential for inciting violence. *Id*. at 368. This reasoning confirms the prison administration's authority to circumscribe the way criticism is exercised. Thus, prison officials "may place reasonable restrictions on inmate speech for any legitimate penological objective, including discipline, order, safety, and security." *Freeman v. Texas Dept. of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004).

Walker contends that the defendants violated his First Amendment right to criticize TDCJ officials publicly. Walker does retain, in a general sense, a right to criticize prison officials. *See Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995); *Gibbs v. King*, 779 F.2d 1040, 1046 (5th Cir. 1986) (quoting *Ruiz v. Estelle*, 679 F.2d 1115, 1153 (5th Cir. 1982) ("[P]rison officials [are] prohibited from 'retaliation against inmates who complain of prison conditions or official misconduct.' "). To succeed on his claims, Walker must do more than point to the existence of a generic First Amendment right; he must also establish that he exercised that right in a manner consistent with his status as a prisoner and in a way not proscribed by a TDCJ policy that has a

legitimate penological purpose.

The federal courts that have considered the issue of a right to use a computer have reasoned that, because prisoners have no federal constitutional right to possess a typewriter, they logically do not have a constitutional right to a computer. *Taylor v. Coughlin*, 29 F.3d 39, 40 (2d Cir. 1994); *Sands v. Lewis*, 886 F.2d 1166, 1169 (9th Cir. 1989); *American Inmate Paralegal Assoc. v. Cline*, 859 F.2d 59, 61 (8th Cir. 1988) ("Prison inmates have no constitutional right of access to a typewriter."); *Lehn v. Hartwig*, 13 Fed.Appx. 389, 392 (7th Cir. 2001) (holding, in a section 1983 action, "If prisoners have no constitutional right to a typewriter, they certainly do not have one to a computer"); *see also Robinson v. Joya*, 2010 WL 1779885, at *3 (E.D. Cal. 2010) (stating, in a section 1983 action, "No court has found that prisoners have a constitutional right to possess personal computers, or items that are similar to personal computers, in their cells."). State inmates do not have a federal constitutional right to possess computers or to access the Internet.

A Washington District Court offered its reasoning, concerning internet usage by prison inmates in an unpublished case:

> Here, the "critical question" is whether the prison's practice of impeding prisoner access to Facebook "is reasonably related to legitimate penological interests." *Solan*, 530 Fed.Appx. at 110-11 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The Supreme Court in *Turner* established a "reasonableness" test to determine whether a prison policy violates inmates' constitutional rights....
>
> Evaluating the *Turner* factors above, first, there is a valid, rational connection between the prison's practice of indirectly cutting off inmates' access to this social media platform and security of the prison and protection of the public. Second, there are multiple alternative means for inmates to communicate with the public, including in-person visits, telephone calls, postal mail, and emails. Third, permitting inmates to communicate via third party agents on Facebook would require incredible prison resources to monitor such communications for unauthorized contacts. Fourth, [plaintiff] has offered no meaningful alternatives to the arrangement, which weighs in favor of the prison's informal policy. *See Solan*,

530 Fed.Appx. at 110.

*See Duenes*, 2017 WL 6210904, at *4 (citing *Spicer v. Richards*, 2008 WL 3540182, at *7-*8 (W.D. Wash. Aug. 11, 2008) (holding ban on possession of electronic devices did not violate detainee's rights)). Walker therefore fails to state a claim that his constitutional rights were violated by the enactment and implementation of a policy that prohibits his possession of a computer and access to social media. *See Duenes v. Wainwright*, No. A-17-CV-0726-LY, 2017 WL 6210904, at *4 (W.D. Tex. Dec. 7, 2017). Accordingly, the undersigned recommends dismissal of such claims.

2.  Access to Courts

To prevail on his access to the court claim, Walker must prove an actual injury by showing that his case was prejudiced. *See Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998). Although Walker claims TDCJ officials tampered with his mail, he does not claim that the alleged tampering harmed him or prejudiced his case, and the Court's records show that he cannot make such a showing.

A claim may be dismissed as frivolous if it lacks an arguable basis in law or fact. *Nietzke v. Williams*, 490 U.S. 319, 325 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). As the foregoing demonstrates, Walker's allegations are clearly baseless; therefore, his First Amendment access to the courts claim should be dismissed as frivolous. *Denton v. Hernandez*, 504 U.S. 25 (1992) (citation and internal quotations omitted).

3.  Legal Mail

Walker states in his complaint that his legal mail was opened by accident on more than one occasion and he received notice of the accidental opening after it occurred. The Supreme Court has also made it clear that a prisoner's freedom from censorship under the First

Amendment's guarantee of free speech regarding his incoming mail is not the equivalent of

freedom from inspection or perusal. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974).

Walker alleges that his incoming legal mail was opened and inspected outside of his

presence, in violation of TDCJ policies, thus violating his constitutional rights of access to the

courts and free speech. He does not assert, however, that his "ability to prepare or transmit a

necessary legal document" was affected by this opening and inspection. Nor does he allege that

his mail has been censored. Also, he does not challenge that such mail was opened and inspected

for the "legitimate penological objective" of prison security, to detect contraband. The Fifth

Circuit has found:

> we thus acknowledge that what we once recognized in *Sterrett* as being
> "compelled" by prisoners' constitutional rights—i.e., that a prisoner's incoming
> legal mail be opened and inspected only in the prisoner's presence—is no longer
> the case in light of *Turner* and *Thornburgh*. Accordingly, we must also hold that
> the violation of the prison regulation requiring that a prisoner be present when his
> incoming legal mail is opened and inspected is not a violation of a prisoner's
> constitutional rights. The Appellants, therefore, have not stated a cognizable
> constitutional claim either for a denial of access to the courts or for a denial of their
> right to free speech by alleging that their incoming legal mail was opened and
> inspected for contraband outside their presence.

*Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993) (footnotes and citations omitted).

Therefore, Walker has not stated a claim based on the accidental opening of his legal mail

outside his presence, and the undersigned recommends dismissal of such claims.

4.  Classification and Housing Assignments

"Federal courts are reluctant to interfere" with matters of prison administration and

management, such as prison discipline and classification of inmates. *Young v. Wainwright*, 449

F.2d 338, 339 (5th Cir. 1971). Walker claims the disciplinary case he received for violating

TDCJ social media policy resulted in his continued classification and housing assignment to the

administrative segregation unit. However, as discussed above, Walker has not met the prerequisite conditions to show that any disciplinary case that resulted in his current (or former) classification was overturned pursuant to the requirements of *Heck*. Walker is also alleging his continued classification and housing assignment were the result of retaliation. However, an inmate "must allege more than his personal belief that he is the victim of retaliation; that is, mere conclusory allegations of retaliation are not sufficient to state a claim for retaliation." *Lerma v. Fed. Bureau of Prisons*, No. 1:01-CV-232-C, 2003 WL 22121092, at *7 (N.D. Tex. Sept. 12, 2003).

On numerous occasions, the Fifth Circuit has held that "[i]nmates have no protectable property or liberty interest in custodial classification." *See Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998) (change in security classification based on allegedly inaccurate information). Since a prison inmate has no protectable liberty interest or property interest in his custodial classification, *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992), it is clear plaintiff has no liberty interest in retaining or obtaining classification as a General Population Inmate, *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Moreover, Walker has not argued that the periodic review procedures he received were insufficient; thus, he has failed to state a cognizable claim. In addition, Walker has not alleged facts showing the confinement violated his Eighth Amendment rights by depriving him of the "minimal measure of life's necessities" or that prison officials acted with subjective deliberate indifference to his conditions of confinement. *See Harper v. Showers*, 173 F.3d 716, 719 (5th Cir. 1999). This claim lacks an arguable legal basis and is frivolous. *Neitzke v. Williams*, 490 U.S. 319 (1989).

5. Food Poisoning and Denial or Delay of Medical Treatment

The federal government is constitutionally obligated "to provide medical care for those it

punishes with incarceration." *Spry v. Chapman*, No. 4:08-CV-459-Y, 2011 WL 1807858, at *5 (N.D. Tex. May 12, 2011). "[T]o prevail on a claim that a prison official violated [plaintiff's] Eighth Amendment right" Walker must "satisfy two requirements." *Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996). "First, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "Second, the inmate must show that the prison official had a culpable state of mind-that the official was deliberately indifferent to inmate health or safety." *Id*. Unsuccessful medical treatment, disagreements over medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference. *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012). The decision not to provide additional medical treatment "is a classic example of a matter for medical judgment." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citing *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). However, "a prison inmate can demonstrate an Eighth Amendment violation by showing that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Sama*, 669 F.3d at 590.

Walker has failed to state a claim that he was served bad food intentionally and in retaliation. As outlined above, Walker's claims of retaliation for exercising his free speech rights are conclusory and do not meet the four-factor test. Independently, Walker has not stated a claim for deliberate indifference by TDCJ officials in treating him or providing medical care for food poisoning. Walker acknowledges he received treatment the morning after he contracted food

poisoning. He alleges he did not receive additional treatment, despite being in pain. This fails to state a claim for deliberate indifference against nurses WILLIAMS or CARRIZALES. Further, Walker did not state a claim against the TDCJ and TTUHSC supervisors based on the actions of WILLIAMS or CARRIZALES.

Walker also alleges defendants GRANTHAM and KING failed to immediately report his illness and provide treatment in a timely fashion, causing him to suffer pain from the food poisoning. The Fifth Circuit has defined a "serious medical need" as "one for which treatment has been recommended or for which the need is so apparent that *even a layman* would recognize that care is required." *Gobert*, 463 F.3d at 345 n.12 (emphasis added). "Deliberate indifference is more than mere negligence or even gross negligence." *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010). Specifically, negligent medical care does not constitute a valid section 1983 claim. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). A plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978). Deliberate indifference only encompasses "unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *Domino*, 239 F.3d at 756.

Moreover, a delay that does not aggravate or exacerbate the medical condition does not constitute a constitutional violation. *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988). A delay in medical care to a prisoner can constitute an Eighth Amendment violation only if there has been deliberate indifference, which results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). As discussed above, Walker has not stated a claim for retaliation pursuant to the four-factor test; additionally, Walker has failed to state a claim that GRANTHAM or KING acted with deliberate indifference to his medical needs by the overnight delay in care, and such act resulted in substantial harm. Thus, the undersigned magistrate judge

recommends dismissal of these claims.

6.   Investigation of Grievances

As to Walker's claim against defendants RAMIREZ, ANDREWS, JONES, unnamed

TDCJ unit grievance department employees, and Warden FOLEY for failing to resolve Walker's

grievances, the narrowing of prisoner due process protection announced in *Sandin v. Conner*,

515 U.S. 472 (1995), leaves Walker without a federally-protected right to have his grievances

investigated and resolved.  Any right of that nature is grounded in state law or regulation and the

mere failure of an official to follow state law or regulation, without more, does not violate

constitutional minima.  *See, e.g., Murray v. Mississippi Dept. of Corrections*, 911 F.2d 1167,

1168 (5th Cir. 1990); *see also Ramirez v. Ahn*, 843 F.2d 864, 867 (5th Cir. 1989).  Plaintiff's

claim against these defendants lack an arguable basis in law and are frivolous.  *Neitzke v.

Williams*, 490 U.S. 319 (1989). The undersigned recommends dismissal of these claims.

7.   Supervisory Liability

In addition, Walker's claims against defendants FOLEY, GLENN, NASH, CANO,

VOLGELGESANG, DESHIELDS, COLLIER, and, in part, ANDREWS and JONES are based,

in whole or in part, upon the supervisory capacities of these defendants and their failure to

correct alleged wrongs; however, the acts of subordinates trigger no individual section 1983

liability for supervisory officers.  *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312,

314 (5th Cir. 1999).  A supervisory official may be held liable only when he is either personally

involved in the acts causing the deprivation of a person's constitutional rights, or there is enough

causal connection between the official's act and the constitutional violation sought to be

redressed.  *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also Douthit v. Jones*, 641

F.2d 345,  346 (5th Cir. 1981) (per curiam).  Walker has alleged no fact demonstrating personal

involvement by these officials and has not shown any causal connection between any acts or omissions by these officials and the alleged constitutional violations. Consequently, Walker's allegations against these defendants fail to state a claim on which relief can be granted and the undersigned recommends dismissal of these claims. Additionally, Walker has not stated a claim against defendants ANDREWS and JONES regarding their supervisory capacity over Walker's claims against MILLER and STEWART, despite stating a claim for relief against MILLER and STEWART individually for unconstitutional deprivation of property.

    8.   Injunctive Relief and Temporary Restraining Order Requests

To obtain a preliminary injunction under Federal Rule of Civil Procedure 65(a), Walker must demonstrate all four of the following elements:

"(1) a substantial likelihood of success on the merits;

(2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied;

(3) the threatened injury outweighs any damage that the injunction might cause the defendant; and

(4) the injunction will not disserve the public interest."

*Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 2014) (quoting *Hoover v. Morales*, 164 F.3d 221, 224 (5th Cir. 1998)). Injunctive relief is an extraordinary remedy requiring the applicant to unequivocally show the need for its issuance. *Sepulvado v. Jindal*, 729 F.3d 413, 417 (5th Cir. 2013) (internal citations and quotations omitted), *cert. denied*, 134 S.Ct. 1789 (2014).

Walker must carry the burden as to all four elements before a preliminary injunction may be considered. *Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (internal quotations and citations omitted). Additionally, for a permanent injunction to issue, the Walker

must prevail on the merits of his claim and establish that equitable relief is appropriate in all other respects. *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847-48 (5th Cir. 2004). Movants for injunctive relief must show that constitutional violations have occurred and that state officials are "demonstrably unlikely to implement required changes" without injunctive relief. *Hay v. Waldron*, 834 F.2d 481 (5th Cir. 1987).

Federal Rule of Civil Procedure 65(b)(1) governs the issuance of a temporary restraining order ("TRO"). A TRO encompasses only restraint on a party for a fourteen-day period. Fed. R. Civ. P. 65(b)(2). If plaintiff's requests for restraint extend beyond this period, then the Court may construe his requests as a motion for a preliminary injunction; as such, the plaintiff must satisfy the substantive requirements for a preliminary injunction to obtain this relief. *See White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989).

Walker's Motion for a Preliminary Injunction [ECF 14] requests the Court intervene to prevent TDCJ from enforcing its social media policy and from retaliating against Walker for his use of social media. As outlined above, Walker's claims for relief based on retaliation allegations are not likely to prevail on the merits, nor is his claim for violation of his free speech rights regarding the use of social media. Additionally, Walker has failed to show he will suffer irreparable injury if the injunction is denied. By his own complaint, Walker acknowledges that he has continued to pursue his writings regarding prison abuses despite the policy in question or any alleged retaliation. As restricting inmate access to internet usage and social media serves a penological interest, Walker also fails to show his threatened injuries outweigh the damage an injunction might cause defendants. Walker's claims for injunctive relief fail.

In the Motion for a Temporary Restraining Order [ECF 19], Walker complains of events primarily occurring at other TDCJ Units outside this Court's jurisdiction. Further, the relief

requested by Walker is permanent, not temporary in nature, and as such the Court construes his request as a request for a permanent injunction. By this motion, Walker again requests the Court intervene to prevent his transfer to other units. Walker alleges these transfers are acts of retaliation for the exercise of his free speech rights. As discussed above, Walker has failed to meet his burden for injunctive relief.

Additionally, Walker's claims for injunctive relief are moot in this lawsuit. Walker is no longer housed in this Court's jurisdiction. At the time of filing of this lawsuit, Walker was housed in the Clements Unit of TDCJ, located in the Northern District of Texas, Amarillo Division, where this Court has jurisdiction. Walker is now housed at the Allred Unit of TDCJ, located in the Northern District of Texas, Wichita Falls Division, outside of this Court's jurisdiction. Walker has not argued in his motion for a temporary restraining order or his motion for a preliminary injunction that he is likely to be transferred back to the Clements Unit.

The United States Fifth Circuit Court of Appeals has explained:

> If a claim is moot, it "presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents." Goldin v. Bartholow, 166 F.3d 710, 717 (5th Cir.1999). A claim becomes moot when "the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). "Mootness in this context is the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Goldin, 166 F.3d at 717 (citation and quotation marks omitted).

National Rifle Ass'n of America, Inc. v. McCraw, 719 F.3d 338, 344 (5th Cir. 2013), cert. denied, 134 S.Ct. 1365 (2014); see also Iron Arrow Honor Society v. Heckler, 464 U.S. 67, 70 (1983) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies."). Walker's requests

for a temporary restraining order and a preliminary injunction (construed as requests for a

permanent injunction) are indeed now moot.

III.
FINDINGS AND CONCLUSIONS

The undersigned makes the following findings and conclusions:

1.      The Court has reviewed all factual allegations in Walker's complaint and
        accepted these allegations as true for purposes of screening this complaint.
        Additionally, the Court notes that Walker has filed a "proposed amended
        complaint." Such complaint contains claims against TDCJ officials at a unit
        outside this Court's jurisdiction, and the undersigned magistrate judge denied
        amendment in a separate order.

2.      This Court finds Walker's due process claims regarding his disciplinary cases are
        predominantly tied to his retaliation claims. To any extent Walker's claims for
        due process violations in his disciplinary proceedings challenge the outcome of
        his disciplinary cases, and to any extent he alleges this affected his classification
        at a later hearing, these claims are barred by *Heck*.

3.      The Court finds Walker's claims of retaliation are conclusory and he has failed to
        state a claim under the Eighth Amendment. Claims of retaliation are regarded by
        federal courts with skepticism, and federal courts must scrutinize such claims to
        guard against inmates' use of such claim as shields with which they may insulate
        themselves from disciplinary actions. *Woods*, 60 F.3d at 1166. Mere conclusory
        allegations of retaliation are not enough to establish a claim. *Jones*, 188 F.3d at
        324-25. Therefore, the Court finds Walker's claims against **CARILLO**,
        **RAINES**, **ANDREWS**, and the "**Unnamed Disciplinary Case Grading
        Officer**" should be dismissed for failure to state a claim on which relief can be
        granted. Although ordinarily a pro se litigant must be given an opportunity to
        amend his complaint to remedy deficiencies before dismissal for failure to state a
        claim, such an opportunity is not needed if any amendment would be futile. An
        amendment is deemed futile if "the amended complaint would fail to state a claim
        upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d
        863, 873 (5th Cir. 2000). As outlined in these Findings and Conclusions, the
        Court finds Walker's claims of retaliation for use of social media with
        disciplinary action cannot state a claim when Walker has no right to access social
        media. Walker also fails to state a claim upon which relief can be granted for the
        enactment, implementation, or enforcement of TDCJ social media policy. Thus,
        Walker's claims against **CLARK** and **FOLEY** should also be dismissed for
        failure to state a claim upon which relief can be granted.

4.    Walker has failed to show he suffered an actual injury from the accidental opening of his media and legal mail. As such, Walker's claims for denial of access to the courts are frivolous and should be denied. Walker's claims against **GLENN**, **YOUNG**, **ASBERRY**, and **"Unnamed" TDCJ Mailroom Employees (John Doe #1 and John Doe #2)** should be dismissed as frivolous.

**5.**    Walker has no cognizable claim for his classification in administrative segregation or his housing, absent a showing of retaliation. On numerous occasions, the Fifth Circuit has held that "[i]nmates have no protectable property or liberty interest in custodial classification." *See Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998) (change in security classification based on allegedly inaccurate information).  Since a prison inmate has no protectable liberty interest or property interest in his custodial classification, *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992), it is clear plaintiff has no liberty interest in retaining or obtaining classification as a General Population Inmate, *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Walker's claims against **"Unknown Clements Unit and TDCJ Administrative and Classification Employees" (John Doe #1-5)** should be dismissed as frivolous.

6.    Walker does not have a federally protected right to have his grievances investigated and resolved. *Sandin*, 515 U.S. at 484. As such, Walker's claims against **RAMIREZ**, **ANDREWS**, **JONES**, and **Unit Grievance Department Employees** are frivolous and should be dismissed.

7.    Walker has failed to state a claim that **GRANTHAM** or **KING**, the two officers that initially responded to Walker's cell after he contracted food poisoning, acted with deliberate indifference to his medical needs by the overnight delay in care, and that such act resulted in substantial harm. These claims should be dismissed for failing to state a claim upon which relief can be granted. Walker received medical care for food poisoning after this initial delay. Walker's insistence that he needed further care fails to state a claim for deliberate indifference against defendants **WILLIAMS**, **CARRIZALES**, **NASH**, **CANO**, **VOLGELGESANG DESHIELDS**, and **Unknown Clements Unit Medical Staff**, and these claims should be dismissed.

8.    Because the acts of subordinates trigger no individual section 1983 liability for supervisory officers, *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999), Walker's claims against defendants **FOLEY**, **GLENN**, **NASH**, **CANO**, **VOLGELGESANG**, **DESHIELDS**, **COLLIER**, and, in part, **ANDREWS** and **JONES**, in their capacities as supervisors, should be dismissed as frivolous.

9.    This Court finds that Walker's requests for a preliminary injunction and a temporary restraining order are moot since his transfer to a TDCJ unit outside this Court's jurisdiction and these motions should be dismissed. In the alternative,

these motions should be denied as Walker is unlikely to prevail on his claims and has failed to meet the burden to merit such relief.

10.    Finally, Walker has alleged that defendants **MILLER** and **STEWART** took money from his inmate trust account when he was on commissary restriction. Although Walker claims these acts were done in retaliation, and although his retaliation claims are conclusory and fail to state a claim for relief, any theft would be an unconstitutional deprivation of property, regardless of motive. Therefore, the Court recommends Walker's claims against **MILLER** and **STEWART** proceed to answer.

IV.
RECOMMENDATION

For the reasons set forth above and pursuant to Title 28, United States Code, sections 1915A and 1915(e)(2), as well as Title 42, United States Code, section 1997e(a), it is the RECOMMENDATION of the United States Magistrate Judge to the United States Senior District Judge that the claims and defendants, as identified by the Findings and Conclusions above and contained in the Civil Rights Complaint filed by JASON WALKER pursuant to Title 42, United States Code, section 1983, be DISMISSED AS FRIVOLOUS, BARRED UNTIL THE *HECK* CONDITIONS ARE MET, AND DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. It is further RECOMMENDED that Walker's Motion for a Preliminary Injunction [ECF 14] and Walker's Motion for a Temporary Restraining Order [ECF 19] should be dismissed as moot, or in the alternative, be denied. Walker's claims against Miller and Stewart should proceed to answer by these defendants.

V.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

Walker may utilize the period for filing objections in which to amend his pleadings to

cure his deficient claim(s), or he may file objections to these Findings, Conclusions and Recommendation. If Walker elects to amend his pleadings, he must utilize the form for filing a civil rights action and must fully set forth all claims and allegations on the amended pleading, not incorporating by reference any previously filed documents.

IT IS SO RECOMMENDED.

ENTERED on February 25, 2019.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).